IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES CALVIN EATON, II, # Y18216,    )
                                     )        24-1692-NJR
              Plaintiff,             )
                                     )
       vs.                           )        Case No. 3:24-cv-00227-MAB
                                     )
ANTHONY WILLS (Menard Warden),       )
and C/O HENDERSON (Shawnee C.C.),    )
                                     )
              Defendants.            )

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff James Calvin Eaton, II, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights during his confinement at Shawnee Correctional Center ("Shawnee") and at Menard (Doc. 1). He asserts that Defendant Henderson threatened to sexually assault him, and he was later held in an unsanitary cell at Menard (Doc. 1, p. 6).

The Complaint (Doc. 1) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims.[1] 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an

---

[1] The Court has jurisdiction to screen the Complaint based on Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

THE COMPLAINT

A review of the Complaint reveals the following allegations:  On or about September 8, 2023, while Plaintiff was in his cell at Shawnee, Defendant C/O Henderson threatened several times to rape Plaintiff and used racial slurs against him (Doc. 1, p. 6). Henderson entered Plaintiff's cell without a Sergeant or Lieutenant present and without handcuffing Plaintiff. Plaintiff defended himself and was punished.

Plaintiff's attached grievance over the incident offers more detail. Plaintiff states he was kicking his cell door to get an officer's attention because his toilet was not working (Doc. 1, p. 11). Henderson told Plaintiff, "Nigger stop kicking on the door before I come in there to really give you something to kick for." Plaintiff asked for a Sergeant because Henderson used the racial slur. Henderson said the Sergeant would call him that too, and ordered Plaintiff, "Stop kicking the door before I come put your head in that toilet and put something in your ass[,] we rape Black Boys down here, you don't [k]no[w] about Shawnee." (Doc. 1, p. 12). Plaintiff responded that he was not scared. Henderson said, "You not scared? I like the tuff Black Boys, cuff up." *Id.* Plaintiff refused to cuff up unless a Sergeant or Lieutenant/"white shirt" was there, and said he wanted to file a PREA[2] [complaint]. Henderson had the door opened and entered Plaintiff's cell, saying, "I'm about to fuck you Nigger." *Id.* Plaintiff believed Henderson's rape threat because he had not summoned other officers or cuffed Plaintiff. Plaintiff was scared and started "fighting

---

[2] Prison Rape Elimination Act.

for [his] life." *Id.*

After this incident, Plaintiff was transferred to Menard on September 8, 2023. Over the next several days, he requested Menard officers to take him out of his cell so he could make a PREA call, but they refused (Doc. 1, p. 13). On September 13, 2023, Defendant Warden Wills did a walk-through of Plaintiff's area (Doc. 1, pp. 6, 13). Plaintiff asked Wills for permission to file a PREA report, but Wills said he had bigger things to worry about and kept walking. Later that day, a Lieutenant took Plaintiff's verbal PREA report, but Plaintiff did not believe it was properly submitted. *Id.*

Plaintiff's requests to see a mental health provider were ignored until October 7, 2023 (Doc. 1, pp. 13-14). Menard staff refused to give Plaintiff grievance forms.

On October 7, 2023, Plaintiff was moved to a cell on 6 Gallery (Doc. 1, p. 14). It was contaminated with human feces all over the toilet and walls. Plaintiff never got any cleaning supplies, and there was no water in the cell for three days. The C/O only gave Plaintiff one food tray per day. Plaintiff wrote to the Warden and to the Governor's office. On October 29, 2023, officers began giving Plaintiff all his food trays. Plaintiff holds Defendant Wills responsible for these problems (Doc. 1, p. 6).

Plaintiff seeks compensatory and punitive damages. (Doc. 1, p. 7).

## DISCUSSION

 Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> **Count 1:**   **Eighth Amendment cruel and unusual punishment claim against Defendant Henderson for threatening Plaintiff with sexual assault and calling him racial slurs on or about**

**September 8, 2023 at Shawnee Correctional Center.**

**Count 2:**      **Eighth Amendment deliberate indifference claim against Defendant Wills of Menard Correctional Center, for ignoring Plaintiff's request to file a PREA report over Henderson's threats.**

**Count 3:**      **Eighth Amendment claim against Defendant Wills, for allowing Plaintiff to be housed at Menard in a cell contaminated with human waste, with no running water for three days, and without sufficient meals, between October 7 and October 29, 2023.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

SEVERANCE OF CLAIMS

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); 3A *Moore's Federal Practice* § 20.06, at 2036-45 (2d ed. 1978).

Here, Plaintiff's claim in Count 1 against Henderson describes threats of sexual

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

assault at Shawnee Correctional Center on approximately September 8, 2023. Count 2 against Warden Wills relates only to Wills' refusal to help Plaintiff file a PREA complaint over that incident. The events underlying Plaintiff's claim in Count 3 against Warden Wills for housing him in the unsanitary cell did not happen until October 7, 2023 in Menard Correctional Center. The claims in Count 1 and Count 3 arose from different transactions and occurrences approximately a month apart at two different institutions. These claims do not share any common question of law or fact. The Court will therefore exercise its discretion and will sever the improperly joined claim in Count 3 into a separate lawsuit. *See* FED. R. CIV. PROC. 18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (noting that district courts should not allow inmates to combine multiple lawsuits into a single complaint). Count 2 relates more closely to Count 1 and shall remain in the present case, but for the reasons set forth below, will be dismissed for failure to state a claim.

Plaintiff will be given the opportunity to voluntarily dismiss the severed case consisting of the claim in Count 3 if he does not wish to pursue it.

### Count 1

Simple verbal harassment, even racially derogatory language, typically does not amount to cruel and unusual punishment. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). However, verbal harassment that is sexual in nature and also involves physical conduct may be actionable under the Eighth Amendment. *See Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015) (verbal sexual harassment accompanied by physical conduct, which caused psychological trauma and placed inmate in danger of assault, stated Eighth

Amendment claim).

Here, Henderson's conduct, as alleged by Plaintiff, went well beyond mere harassment. According to Plaintiff, he issued several graphic threats to sexually assault him, accompanied by racial slurs. He allegedly broke protocol to enter Plaintiff's cell without other officers in the vicinity, while announcing again he was about to rape Plaintiff. Plaintiff feared he would be assaulted, and the incident continued to affect his mental health for some time. These allegations are sufficient for the Eighth Amendment claim in Count 1 to proceed against Henderson.

### Count 2

The Complaint, however, fails to state a claim against Warden Wills for ignoring Plaintiff's request to file a PREA complaint over the incident in Count 1. To be liable under § 1983, a defendant must be personally responsible for the violation of a constitutional right. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). The alleged mishandling of prison grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

Wills had no personal involvement in Henderson's alleged misconduct, which did not even occur in the prison that Wills supervises. Plaintiff's allegations that his attempts to file a PREA complaint were frustrated by Menard officials is concerning. However, such inaction does not rise to the level of a constitutional violation. Count 2 will be dismissed for failure to state a claim upon which relief may be granted, and Wills shall be dismissed from the action.

**DISPOSITION**

For the reasons stated above, Count 3 against Anthony Wills is **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;

- The Complaint (Doc. 1);

- Plaintiff's motion to proceed IFP (Doc. 9).

In the new case, Plaintiff shall have the option to proceed on Count 3 or to dismiss the case without prejudice and before he is required to pay a fee.

The only claims remaining in this case are Counts 1 and 2. Count 3 is **DISMISSED** from *this* case with prejudice.

**IT IS HEREBY ORDERED** that Count 1 against Henderson survives initial screening as described above. Count 2 is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted, and Defendant Wills is **DISMISSED** from this action.

The Clerk shall prepare for C/O Henderson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of

Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is

**DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: July 8, 2024**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendant will enter an appearance and file an Answer to your Complaint. It will likely take at least 60 days from the date of this Order to receive the Defendant's Answer, but it is entirely possible that it will take 90 days or more. When Defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give the Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.